## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

DEMIS ESPINOZA, on behalf
of himself and on behalf of all others
similarly situated,

      Plaintiff,

v.                        Case No.: 1:21-cv-22684-BB

MANAGED LABOR SOLUTIONS, LLC,
and, PEOPLEASE, LLC,

      Defendants.
_____/

## AMENDED CLASS ACTION
## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Demis Espinoza, on behalf of himself, the putative classes set forth below, and in the public interest, brings this Amended Class Action Complaint against Managed Labor Solutions, LLC ("MLS"), and Peoplease, LLC ("Peoplease"), for violations of the Fair Credit Reporting Act of 1970, as amended ("FCRA"), 15 U.S.C. § 1681 et seq. Plaintiff seeks to hold MLS and Peoplease accountable for violating his federally protected privacy rights.

## PRELIMINARY STATEMENT

1.    The FCRA, 15 U.S.C. § 1681b, makes it presumptively unlawful to obtain and use a consumer report for an employment purpose. The use of a consumer report for employment purposes only becomes lawful if the consumer

reporting agency and person procuring the report comply with the FCRA's strict requirements.

2.   MLS and Peoplease willfully violated these requirements in multiple ways, in systematic violation of Plaintiff's rights and the rights of other putative class members.

3.   Peoplease violated 15 U.S.C. § 1681b(b)(2)(A)(i) by procuring consumer reports on Plaintiff and other putative class members, without lawfully disclosing to them that it may obtain their consumer report, before obtaining a copy of their consumer report.

4.   Peoplease violated 15 U.S.C. § 1681(b)(b)(2)(A)(ii) by obtaining consumer reports on Plaintiff and other putative class members without their written authorization.

5.   Plaintiff asserts FCRA claims against Peoplease on behalf of himself and others to whom Peoplease did not provide a disclosure or from whom Peoplease did not obtain written authorization prior to procuring their consumer report for employment purposes.

6.   MLS violated 15 U.S.C. § 1681b(b)(3) by denying employment opportunities to Plaintiff based in part or in whole, on the results of Plaintiff's consumer report without first providing him notice and a copy of the report.

7.   Plaintiff asserts FCRA claims against MLS on behalf of himself and

others to whom MLS did not provide notice and a copy of their consumer report before taking adverse employment action against them based in whole or in part on their consumer reports as required by 15 U.S.C. § 1681b(b)(3).

8.   In Count I, Plaintiff asserts a FCRA claim under 15 U.S.C. § 1681b(b)(2)(A)(i) against Peoplease on behalf of a "No Disclosure Class" consisting of:

> **All job applicants and employees in the United States subject of a consumer report procured by Peoplease for employment purposes but to whom Peoplease did not first provide a clear and conspicuous disclosure in a document consisting solely of the disclosure in the five years preceding the filing of this action through the date of final judgment.**

9.   In Count II, Plaintiff asserts a FCRA claim under 15 U.S.C. § 1681b(b)(2)(A)(i)(ii) against Peoplease on behalf of a "No Authorization Class" consisting of:

> **All job applicants and employees in the United States subject of a consumer report procured by Peoplease for employment purposes but from whom Peoplease did not first obtain written authorization to procure their report in the five years preceding the filing of this action through the date of final judgment.**

10.   In Count III, Plaintiff asserts a FCRA claim under 15 U.S.C. § 1681b(b)(3) against MLS on behalf of an "Adverse Action Class," defined as:

> **All Managed Labor Solutions job applicants and employees in the United States against whom adverse employment action was taken, based, in whole or in part, on information contained in their consumer report, who were not provided**

**notice and a copy of their report in the five years preceding the filing of this action through the date of final judgment.**

11.    On behalf of himself and the putative classes, Plaintiff seeks statutory damages, costs and attorneys' fees, and other appropriate relief under the FCRA.

## THE PARTIES

12.    Individual and representative Plaintiff, Demis Espinoza ("Plaintiff") is a member of all three putative classes.

13.    Peoplease is a professional employer organization ("PEO") and user of consumer reports as contemplated by the FCRA, at 15 U.S.C. § 1681b.

14.    MLS is an employer and user of consumer reports as contemplated by the FCRA, at 15 U.S.C. § 1681b.

## JURISDICTION AND VENUE

15.    Plaintiff alleges violation of federal law.  Plaintiff originally filed his action in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida pursuant to 28 U.S.C. § 1331.  Defendant subsequently removed this action to this Court.

16.    Plaintiff originally filed his action in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, because the underlying events occurred in or near Miami, Florida.

### *FCRA Requirements for Procuring*
### *Employment-Purposed Consumer Report*s

17.    Under the FCRA, it is unlawful to procure a consumer report or cause a consumer report to be procured for employment purposes unless certain requirements are satisfied.  Specifically, in relevant part:

**(2)   Disclosure to Consumer**.

(A)   *In general*. Except as provided in subparagraph (B), a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless -

(i)    *a clear and conspicuous* disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists *solely of the disclosure*, that a consumer report may be obtained for employment purposes; and

(ii)   the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report *by that person*.

15 U.S.C. §§ 1681b(b)(2)(A)(i)-(ii)(emphasis added).

18.    Peoplease did not provide consumers a clear and conspicuous disclosure in a document consisting solely of the disclosure before procuring their consumer reports for employment purposes.

19.    Peoplease did not obtain consumers' written authorization to procure their consumer reports before procuring their consumer reports for employment

purposes.

20.     The purpose of FCRA notice provisions, including §
1681b(b)(2)(A)(i), is to put consumers on notice that their consumer report is being
procured and who is procuring it.  This gives consumers the opportunity to exercise
substantive rights conferred by the FCRA or other statutes, allowing consumers to
decide who accesses their personal, sensitive information.

21.     Without clear notice as to who is obtaining and accessing their
personal, sensitive information, applicants and employees are deprived of the
opportunity to make informed decisions, assert protected rights, or maintain control
over their personal information.   Control over one's personal and private
information is a fundamental right dating back to English common law and
violations thereof have historically been recognized as actionable in American
courts.

22.     Peoplease knowingly and recklessly disregarded case law and
regulatory guidance and willfully violated 15 U.S.C. § 1681b(b)(2)(A) by
procuring consumer reports on applicants and employees without first providing a
disclosure or obtaining their written authorization ahead of time.

23.     Peoplease's conduct is also willful because:

  a.     Peoplease is a large and sophisticated employer with access to
         legal advice through its own attorneys and there is no evidence
         it determined its own conduct was lawful;

      b.    Peoplease knew or had reason to know that its conduct was inconsistent with published FCRA guidance interpreting the FCRA, case law and the plain language of the statute; and

      c.    Peoplease voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

24.    Peoplease acted in a deliberate or reckless disregard of its obligations and the rights of Plaintiff and the other "No Disclosure" and the "No Authorization" class members.

25.    Any reasonable staffing agency of Peoplease's size and sophistication knows or should know about fundamental FCRA compliance requirements.

26.    Providing notice to consumers is a critical component of the FCRA, evidenced by the fact the FCRA also contains several other notice provisions, including 15 U.S.C. § 1681b(b)(3)(A) (pre-adverse action).[1]

27.    The FCRA states "in using a consumer report for employment purposes, before taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates . . . a copy of the report[.]" 15 U.S.C. § 1681b(b)(3)(A)(i).

28.    MLS violated 15 U.S.C. § 1681b(b)(3)(A), which requires that all employers who use consumer reports provide notice and a copy of the report to the affected consumer before any adverse action is taken.

---

[1] *See, e.g.* 15 U.S.C. § 1681b(4)(B)(notice of national security investigation); § 1681c(h) (notification of address discrepancy); § 1681g (full file disclosure to consumers); § 1681k(a)(1) (disclosure regarding use of public record information); § 1681h (form and conditions of disclosure; and § 1681m(a) (notice of adverse action).

29.     By failing to provide Plaintiff and other putative class members with the information required by 15 U.S.C. § 1681b(b)(3)(A) before taking adverse employment action against them based on the information contained in such reports, MLS willfully disregarded unambiguous regulatory guidance and the plain language of the statute. 15 U.S.C. § 1681b(b)(3)(A).

### *Facts Supporting Plaintiff's Claims*

30.     Plaintiff was previously employed by MLS through Peoplease between September 18, 2019 and November 13, 2019.

31.     MLS and Peoplease terminated Plaintiff's employment on November 13, 2019, thereby terminating the employment relationship between MLS, Peoplease and Plaintiff.

32.     In October, 2020, eleven months after MLS and Peoplease terminated Plaintiff's employment, Plaintiff again applied for employment with MLS in Miami, Florida.

33.     On October 19, 2020, as a condition of hire, Plaintiff authorized MLS to obtain his consumer report. (Exhibit "A").

34.     On or around October 20, 2020, MLS and Peoplease ordered Plaintiff's consumer report from Crimcheck, a consumer reporting agency.

35.     On or around October 23, 2020, Crimcheck provided Plaintiff's consumer report to MLS and Peoplease.

36.    Crimcheck, using MLS's standards adjudicated/scored Plaintiff as "Questionable" based upon his then-pending criminal charges.

37.    Discovery will show "Questionable" is an adjudication/score which, unless otherwise changed, renders an applicant ineligible for hire.

38.    Discovery will show that on or October 23, 2020, Crimcheck communicated to MLS and/or Peoplease an adjudication making Plaintiff ineligible for hire, causing MLS to make the decision to reject Plaintiff's application for employment.

39.    Discovery will show that on or October 23, 2020, Crimcheck communicated to MLS and/or Peoplease an adjudication making Plaintiff ineligible for hire, causing MLS and/or Peoplease to enter into its computer system a code or designation confirming Plaintiff's ineligibility.

40.    The adjudication "Questionable" rendered Plaintiff ineligible for hire for as long as such adjudication was affixed to Plaintiff's consumer report.

41.    Discovery will show that if Plaintiff had been designated/adjudicated "Clear," he would have been eligible for employment in October, 2020.

42.    Discovery will show that on or about October 23, 2020, MLS a adopted the adjudication as its own.  The adoption of the adjudication was an adverse employment action.

43.    Plaintiff was rejected for employment on October 23, 2020, in whole

or in part because of his consumer report.

44.    Shortly after October 23, 2020, Plaintiff contacted MLS's corporate office to check on the status of his application.  Plaintiff was informed by an employee in MLS's human resource department that his application for employment had been rejected because of his "background check."

45.    In October, 2020, MLS denied Plaintiff employment based in whole or in part on the contents of his consumer report.

46.    Plaintiff was not provided notice or a copy of his background check from MLS, prior to being rejected for employment.  As a result, Plaintiff never saw what was on his consumer report and didn't know whether it was in fact accurate.

47.    MLS failed to provide Plaintiff with pre-adverse action notice, including a copy of his consumer report and written summary of his FCRA rights at least five business days before coding him as ineligible in its computer system was a blatant violation of the requirements set forth by 15 U.S.C. § 1681b(b)(3).

48.    Ultimately, through his counsel, Plaintiff obtained a copy of his consumer report from October, 2020.

49.    Plaintiff was surprised to learn that Peoplease had procured his consumer report in October, 2020, without his knowledge.

50.    In October 2020, Peoplease did not disclose to Plaintiff it intended to procure his consumer reports from a consumer reporting agency.

51.     In October, 2020, Plaintiff did not authorize Peoplease to obtain his consumer report from a consumer reporting agency.

52.     In October 2020, Peoplease never obtained Plaintiff's written authorization to procure his consumer report.

53.     Plaintiff values his privacy and would not have authorized Peoplease to obtain his consumer report without his consent.

54.     Plaintiff values his privacy rights and would not have consented to Peoplease obtaining his personal and sensitive information without his knowledge.

55.     Plaintiff would not have authorized Peoplease to obtain his consumer report in October, 2020 if he knew it was being obtained illegally and would be used to deny him employment.

56.     If Plaintiff had not hired an attorney to obtain a copy of his consumer reports, Plaintiff would have never known Peoplease had obtained his consumer report and was in possession of his personal and sensitive information.

57.     If Plaintiff had not hired an attorney, Plaintiff would have never seen the consumer report, including "Questionable" adjudication/score, that was used October 2020, to take an adverse employment action against him because he was never provided pre-adverse action notice and a copy of his report beforehand. Consequently, Plaintiff would never have seen the contents of his own consumer report or learned what was being reported about him.

***Peoplease Caused Plaintiff Concrete Harm***

58.    Peoplease invaded Plaintiff's privacy when it failed to provide Plaintiff with a disclosure or obtain his written authorization before it procured his consumer report, which contained Plaintiff's personal and sensitive information.

59.    Peoplease invaded Plaintiff's privacy by accessing his personal and sensitive information without first disclosing to Plaintiff its intent or obtaining his written authorization.

60.    Peoplease invaded Plaintiff's privacy by accessing Plaintiff's personal and sensitive information without his knowledge or written consent.

61.    Peoplease did not provide a disclosure to Plaintiff before obtaining his consumer report for employment purposes.  Therefore, Peoplease illegally invaded Plaintiff's privacy by accessing his consumer report without his consent, authorization, or a permissible purpose.

62.    Plaintiff suffered a concrete informational injury when Peoplease circumvented the FCRA's disclosure requirement.   When Peoplease obtained Plaintiff's consumer report without disclosing its intent to procure a consumer report, Plaintiff suffered informational injury in that he lost control over the dissemination of his personal and sensitive information – a right Congress elevated to a concrete harm by incorporating the disclosure requirement into the FCRA.

63.    Plaintiff suffered a concrete informational injury when Peoplease

circumvented the FCRA's authorization requirement. When Peoplease obtained Plaintiff's consumer report without obtaining his written authorization, Plaintiff suffered informational injury in that he lost control over the dissemination of his personal and sensitive information – a right Congress elevated to a concrete harm by incorporating the written authorization requirement into the FCRA.

64. Peoplease violated the FCRA by procuring consumer reports on Plaintiff and other No Disclosure Class members without first providing them a clear and conspicuous disclosure as required by 15 U.S.C. § 1681b(b)(2)(A)(i).

65. Peoplease violated the FCRA by procuring consumer reports on Plaintiff and other No Disclosure Class members without first obtaining written authorization as required by 15 U.S.C. § 1681b(b)(2)(A)(ii).

66. Peoplease's failure to provide a disclosure or obtain written authorization created a risk of harm that Plaintiff and members of the putative No Disclosure Class would never know their personal and sensitive information was obtained and possessed by Peoplease.

67. Additionally, Peoplease invaded Plaintiff's right to privacy and intruded upon his seclusion. Under the FCRA, a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless it complies with the statutory requirements (*i.e.*, disclosure and authorization) set forth in subsections 15 U.S.C.

§§ 1681b(b)(2)(A)(i)-(ii).

68.    The FCRA's disclosure and authorization requirements codified in 15 U.S.C. §§ 1681b(b)(2)(A)(i)-(ii) bear a close relationship to privacy torts actionable under common law including "(a) unreasonable intrusion upon the seclusion of another, ... (b) appropriation of the other's name or likeness, ... (c) unreasonable publicity given to the other's private life, ... or (d) publicity that unreasonably places the other in a false light before the public ....' Restatement (Second) of Torts § 652A(2)(a)-(d) (1977)."

69.    These statutory requirements were enacted by Congress expressly to protect consumer privacy by restricting the circumstances under which a person (in this instance Peoplease) could obtain and use a consumer's personal information consumer report.

70.    In enacting this FCRA provision, Congress also expressly sought to guarantee important material information be provided to Plaintiff and consumers like him with respect to employer use of a consumer report for an employment adverse action.

71.    Plaintiff and each putative class member have been substantively harmed and injured by Peoplease in the deprivation of the congressionally mandated information.

***MLS caused Plaintiff concrete harm***

72.    MLS's failure to provide pre-adverse action notice injured Plaintiff in that he was deprived of information due to him at a particular time, and the ability to contest or discuss with MLS the content of his consumer report.

73.    These rights attach even if the report was accurate, as courts regularly recognize that § 1681b(b)(3) entitles consumers to know the same information the employer is using to make its hiring decision and, even if the report contains no inaccuracies, to soften the brunt of negative information by discussing it preemptively with the employer before the hiring decision is made.

74.    MLS denied Plaintiff employment based in whole or in part on the content of his consumer report but did not first provide him with pre-adverse action notice, including a copy of his consumer report.  Therefore, MLS failed to satisfy the federally imposed requirements of § 1681b(b)(3)(A)(i).  This resulted in an informational injury to Plaintiff and the putative class members.

75.    Because MLS failed to provide Plaintiff with a copy of his consumer report, Plaintiff was deprived of the opportunity to proactively address how his background was being interpreted by MLS and to discuss the information and place it in context.

76.    Plaintiff was worried whether the information contained in his consumer report was accurate and how it would affect his prospects of

employment elsewhere.

77.     Plaintiff spent time researching their rights to obtain the information contained in his consumer report.

78.     Plaintiff spent time obtaining his consumer report from Crimcheck. This despite the fact that MLS is required by the FCRA to provide consumers with copies of their reports before taking adverse actions against them. 15 U.S.C. § 1681b(b)(3).

79.     The FCRA's protections regarding who may obtain consumer reports and how they may be used are real and substantive, not merely procedural. The violation alleged here is not just a technical requirement – MLS had no right to take an adverse employment action against Plaintiff without first providing him notice of its intent, and a copy of his consumer report.

80.     Plaintiff and the putative class members, all of whom were denied pre-adverse action notice, therefore suffered a concrete, in-fact injury that is directly traceable to MLS's conduct and that is likely to be redressed by a favorable decision here.

81.     Plaintiff and the putative class members suffered additional concrete harm because of the adjudication of their reports. In taking such adverse actions against applicants before providing them with the notice and summary of rights demanded by § 1681b(b)(3), MLS deprived Plaintiff and class members with

information to which they were statutorily entitled at a particular time.   This deprivation worked concrete harm on Plaintiff and members of the classes.

82.   Courts regularly recognize that violations of § 1681b(b)(3) work concrete harm on consumers. *See*, e.g., *Helwig v. Concentrix Corp.*, No. 1:20-cv-920, 2021 WL 1165719, at *3 (N.D. Ohio Mar. 26, 2021) (concluding that deprivation of notice before adverse action resulted in Article III harm, and citing cases from the Third, Sixth, Seventh, and D.C. Circuits so holding).

83.   This statutory requirement was enacted by Congress expressly to protect consumer privacy by restricting the circumstances under which a person (in this instance MLS) could obtain and use a consumer's personal information consumer report.   Congress elevated the use of consumers' private information without following the statutory requirements as a harm causing a concrete injury.

84.   In enacting this FCRA provision, Congress also expressly sought to guarantee important material information be provided to Plaintiff and consumers like him with respect to employer use of a consumer report for an employment adverse action.

85.   Plaintiff and each putative class member have been substantively harmed and injured by Defendant in the deprivation of the congressionally mandated information.

86.   Concrete harm results from the deprivation of notice even if the

background report is accurate. *Hood v. Action Logistix, LLC*, No. 4:20-cv-978 RWS, 2021 WL 1143885, at *4 (E.D. Mo. Mar. 25, 2021) (concluding that "[a]n unsuccessful job applicant suffers a concrete harm when he is deprived of these [Section 1681b(b)(3)] rights—even if the information in the report is true and accurate," and collecting cases holding likewise).

87.    That is because context is important, and being denied the ability to see the report on which an employer is basing a negative hiring decision prevents consumers from being able to explain any negative information. *See id.* at *5 ("[T]he language of § 1681b(b)(3)(A) as well as the legislative history of the FCRA reflects clear congressional intent to make an individual's inability to review and respond to the contents of his consumer report before suffering an adverse employment action a redressable harm.").

88.    Moreover, § 1681b(b)(3)(A) bears a "close relationship" with common law privacy rights understood as being invaded by "'(a) unreasonable intrusion upon the seclusion of another, ... (b) appropriation of the other's name or likeness, ... (c) unreasonable publicity given to the other's private life, ... or (d) publicity that unreasonably places the other in a false light before the public ....' Restatement (Second) of Torts § 652A(2)(a)-(d) (1977)." *Long v. S.E. Pennsylvania Transportation Auth.*, 903 F.3d 312, 319 (3d Cir. 2018).

### *Defendants Acted Willfully*

89.     Defendants knew or should have known about their legal obligations under the FCRA.  These obligations are well established in the statute's plain language, judicial decisions interpreting the Act, and in the Federal Trade Commission's and Consumer Financial Protection Bureau's promulgations.

90.     Before a person takes an adverse employment action, it must provide two documents to the prospective employee. *See* Letter from Clark W. Brinckerhoff to Erick J. Weisberg (June 27, 1997), FTC Informal Staff Letter ("Brinckerhoff Letter II") (noting that taking action a period of five business days after notice "appears reasonable."). To ensure knowing compliance with the FCRA, Congress requires that before any consumer reporting agency may provide consumer reports on an applicant, the reporting agency must have obtained a certification from the employer that it will comply with 15 U.S.C. § 1681b(b)(3) whenever the employer decides to take adverse action based in whole or in part on the consumer report. 15 U.S.C. § 1681b(b)(1)(A).

91.     Upon information and belief, Defendants knowingly executed a certification providing that it would comply with the various provisions of the FCRA whenever adverse action was contemplated or taken based in whole or in part on information contained in a consumer report.

92.     Despite the certifications, Defendants knowingly violated 15 U.S.C.

§§ 1681b(b)(2)(A)(i)-(ii) and 1681b(b)(3).

93.    Defendants obtained, or had available, substantial written materials, which apprised them of their duties under the FCRA.

94.    These requirements have been part of the fabric of the FCRA since Congress enacted it.  Defendants have had decades by which to become compliant with these requirements, yet have not done so.

95.    Despite knowledge of these legal obligations, Defendants acted consciously in breaching its known duties and depriving the Plaintiff and putative class members of their rights under the FCRA.

96.    As a result of these FCRA violations, Defendants are liable to Plaintiffs and to each putative class member for statutory damages from $100.00 to $1,000.00 pursuant to 15 U.S.C. § 1681n(a)(1)(A), plus punitive damages pursuant to 15 U.S.C. § 1681n(a)(2), for the violations alleged herein, and for attorney's fees and costs pursuant to § 1681n and § 1681o.

## CLASS ACTION ALLEGATIONS

97.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure and 15 U.S.C. § 1681b, Plaintiff brings this action for himself and on behalf of the putative classes defined below.

98.    In Count I, Plaintiff asserts a FCRA claim under 15 U.S.C. § 1681b(b)(2)(A)(i) against Peoplease on behalf of a "No Disclosure Class"

consisting of:

> **All job applicants and employees in the United States subject of a consumer report procured by Peoplease for employment purposes but to whom Peoplease did not first provide a clear and conspicuous disclosure in a document consisting solely of the disclosure in the five years preceding the filing of this action through the date of final judgment.**

99.   In Count II, Plaintiff asserts a FCRA claim under 15 U.S.C. § 1681b(b)(2)(A)(ii) against Peoplease on behalf of a "No Authorization Class" consisting of:

> **All job applicants and employees in the United States subject of a consumer report procured by Peoplease for employment purposes but from whom Peoplease did not first obtain written authorization to procure their report in the five years preceding the filing of this action through the date of final judgment.**

100.   In Count III, Plaintiff asserts a FCRA claim under 15 U.S.C. § 1681b(b)(3) against MLS on behalf of an "Adverse Action Class," defined as:

> **All Managed Labor Solutions job applicants and employees in the United States against whom adverse employment action was taken, based, in whole or in part, on information contained in their consumer report, who were not provided notice and a copy of their report in the five years preceding the filing of this action through the date of final judgment.**

101.   <u>Numerosity</u>: The members of the putative No Disclosure, No Authorization, and Adverse Action classes are so numerous that joinder of all Class members is impracticable.   Defendants regularly obtain and use information in consumer reports to conduct background checks on prospective

employees and existing employees, and frequently rely on such information, in whole or in part, in the hiring process.  Plaintiff is informed and believes that during the relevant time period there are hundreds if not thousands of consumers that satisfy the definition of the putative classes.

102.  Typicality:  Plaintiff's claims are typical of those of the members of the putative No Disclosure and No Authorization classes, in that Peoplease obtained his consumer report for employment purposes without providing him a clear and conspicuous disclosure before procuring his consumer report and did not obtain his written authorization before procuring such report for employment purposes.  Additionally, Plaintiff's claims are typical of those of the members of the Adverse Action Class, in that MLS denied employment to Plaintiff and other members of the Adverse Action Class, based on the contents of such consumer report, as Plaintiff never received pre-adverse action notice and a copy of his consumer report beforehand.  The FCRA violations suffered by Plaintiff are typical of those suffered by other members of the putative classes.  Additionally, the damages Plaintiff is seeking to recover are typical of the damages Plaintiff is seeking on behalf of the putative classes.

103.  Adequacy:  Plaintiff is a member of and will fairly and adequately protect the interests of the putative classes, and has retained counsel experienced in FCRA class action litigation.

104.  <u>Commonality</u>:   Common questions of law and fact exist as to all members of the putative classes, and predominate over any questions solely affecting individual members of the putative classes.   These common questions include, but are not limited to:

<ul style="list-style-type: lower-alpha">
<li>whether Peoplease procured consumer reports for employment purposes without making the FCRA-required disclosures;</li>

<li>whether Peoplease procured consumer reports for employment purposes without first obtaining consumers' written authorization;</li>

<li>whether Peoplease's failure to provide disclosures or obtain consumer's written authorizations prior to obtaining consumer reports for employment purposes was willful;</li>

<li>whether MLS's failure to provide Plaintiff with pre-adverse action notice and a copy of his consumer report before taking an adverse employment action against him based in whole or in part on his consumer report was willful; and</li>

<li>the proper measure of statutory damages and attorneys' fees.</li>
</ul>

105.  This case is maintainable as a class action because prosecution of actions by or against individual members of the putative classes would result in inconsistent or varying adjudications and create the risk of incompatible standards of conduct for the Defendants.   Further, adjudication of each individual class member's claim as a separate action would potentially be dispositive of the interest of other individuals not a party to such action, thereby impeding their ability to protect their interests.

106.   This case is also maintainable as a class action because Defendants acted or refused to act on grounds that apply generally to the putative classes.

107.   Class certification is also appropriate because questions of law and fact common to the putative classes predominate over any questions affecting only individual members of the putative classes, and also because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.   Defendants' conduct, which is described herein, stems from common and uniform policies and practices, resulting in common violations of the FCRA. Members of the putative classes do not have an interest in pursuing separate actions, as the amount of each Class member's individual claim for damages is small in comparison to the expense and burden of individual prosecution.   Class certification will also obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendants' practices.   Moreover, management of this action as a class action will not present any foreseeable difficulties.   In the interests of justice and judicial efficiency, it would be desirable to  concentrate the litigation of all putative class members' claims in a single action, brought in a single forum.

108.   Plaintiff intends to send notice to all members of the putative classes to the extent required by Rule 23.   The names and addresses of the putative class members are readily available from Defendants and through records maintained by

third parties.

## COUNT I
**Failure to Make Proper Disclosure**
**in Violation of FCRA 15 U.S.C. § 1681b(b)(2)(A)(i)**
**(Against Peoplease)**

109.  Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs 30-71.

110.  Peoplease violated the FCRA by procuring consumer reports relating to Plaintiff and other No Disclosure Class members without first providing a disclosure.

111.  The foregoing violations were willful.  At the time Peoplease violated 15 U.S.C. § 1681b(b)(2)(A)(i), Peoplease knew that it had to disclose to Plaintiff and the putative class that it intended to procure their consumer reports before it was permitted to obtain their consumer reports for employment purposes.   A plethora of authority, including both case law, and FTC opinions, existed at the time of Peoplease's violations on this very issue.  Peoplease's willful conduct is also reflected by, among other things, the following facts:

    a.   Peoplease is a large corporation with access to legal advice through its own general counsel's office and outside employment counsel, and there is not contemporaneous evidence that it determined that its conduct was lawful;

    b.   Peoplease knew or had reason to know that its conduct was inconsistent with published FTC guidance interpreting the FCRA and the plain language of the statute; and

      c.     Peoplease voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

112.   Plaintiff and the No Disclosure Class are entitled to statutory damages of not less than one hundred dollars ($100.00) and not more than one thousand dollars ($1,000.00) for each and every one of these violations under 15 U.S.C. § 1681n(a)(1)(A), in addition to punitive damages under 15 U.S.C. § 1681n(a)(2).

113.   Plaintiff and the No Disclosure Class are further entitled to recover their costs and attorneys' fees, in accordance with 15 U.S.C. § 1681n(a)(3).

WHEREFORE, Plaintiff, on behalf of himself and the putative class, prays for relief as follows:

      a.     determining that this action may proceed as a class action;

      b.     designating Plaintiff as class representative and designating Plaintiff's counsel as counsel for the putative class;

      c.     issuing proper notice to the putative class at Peoplease's expense;

      d.     awarding statutory damages as provided by the FCRA, including punitive damages, to members of the putative class; and

      e.     awarding reasonable attorneys' fees and costs as provided by the FCRA.

## COUNT II
**Failure to Obtain Authorization in**
**Violation of FCRA 15 U.S.C. § 1681b(b)(2)(A)(ii)**
**(Against Peoplease)**

114.   Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs 30-71.

115.   Peoplease violated the FCRA by procuring consumer reports relating to Plaintiff and other No Authorization class members without first obtaining their written authorization.

116.   The foregoing violations were willful.  Peoplease acted in deliberate or reckless disregard of its obligations and the rights of Plaintiff and other No Authorization Class members under 15 U.S.C. § 1681b(b)(2)(A)(ii).  Peoplease knew or should have known of its legal obligations under the FCRA.  These obligations are well established in the plain language of the statute and in the promulgations of the Federal Trade Commission.  Peoplease obtained or otherwise had available substantial written materials that apprised Peoplease of its duties under the FCRA.  Any reasonable employer knows of the existence of these FCRA mandates, or can easily discover their substance.

117.  Plaintiff and the No Authorization Class are entitled to statutory damages of not less than one hundred dollars ($100.00) and not more than one thousand dollars ($1,000.00) for each and every one of these violations under 15 U.S.C. § 1681n(a)(1)(A), in addition to punitive damages as the Court may allow

under 15 U.S.C. § 1681n(a)(2).

118.   Plaintiff and the No Authorization Class are further entitled to recover their costs and attorneys' fees, in accordance with 15 U.S.C. § 1681n(a)(3).

WHEREFORE, Plaintiff, on behalf of himself and the putative class, prays for relief as follows:

a.     determining that this action may proceed as a class action;

b.     designating Plaintiff as class representative and designating Plaintiff's counsel as counsel for the putative class;

c.     issuing proper notice to the putative class at Peoplease's expense;

d.     awarding statutory damages as provided by the FCRA, including punitive damages, to members of the putative class; and

e.     awarding reasonable attorneys' fees and costs as provided by the FCRA.

## COUNT III
### Failure to Provide Adverse Action Notice in Violation of FCRA 15 U.S.C. § 1681b(b)(3)(A) (Against MLS)

119.   Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs 30-71, 72-88.

120.   MLS used a "consumer report," as defined by the FCRA, to take adverse employment action against Plaintiff and other members of the Adverse Action Class.

121.   MLS violated the FCRA by failing to provide Plaintiff and other

Adverse Action Class members with pre-adverse action notice and a copy of their consumer report before taking such adverse action. 15 U.S.C. § 1681b(b)(3)(A).

122.   The foregoing violations were willful.  MLS acted in deliberate or reckless disregard of its obligations and the rights of Plaintiff and other Adverse Action Class members under 15 U.S.C. § 1681b(b)(3)(A).  MLS knew or should have known of its legal obligations under the FCRA.  These obligations are well established in the plain language of the statute and in the promulgations of the Federal Trade Commission.  MLS obtained or otherwise had available substantial written materials that apprised MLS of its duties under the FCRA.  Any reasonable employer knows of the existence of these FCRA mandates, or can easily discover their substance.

123.  Plaintiff and the Adverse Action Class are entitled to statutory damages of not less than one hundred dollars ($100.00) and not more than one thousand dollars ($1,000.00) for each and every one of these violations under 15 U.S.C. § 1681n(a)(1)(A), in addition to punitive damages as the Court may allow under 15 U.S.C. § 1681n(a)(2).

124.   Plaintiff and the Adverse Action Class are further entitled to recover their costs and attorneys' fees, in accordance with 15 U.S.C. § 1681n(a)(3).

WHEREFORE, Plaintiff, on behalf of himself and the putative class, prays for relief as follows:

a.      determining that this action may proceed as a class action;

b.      designating Plaintiff as class representative and designating Plaintiff's counsel as counsel for the putative classes;

c.      issuing proper notice to the putative classes at MLS's expense;

d.      awarding statutory damages as provided by the FCRA, including punitive damages, to members of the putative class; and

e.      awarding reasonable attorneys' fees and costs as provided by the FCRA.

## DEMAND FOR JURY TRIAL

Plaintiff and the putative classes demand a trial by jury.

Dated this 16th day of September, 2021.

/s/ *Marc R. Edelman*
**MARC R. EDELMAN, ESQ.**
Fla. Bar No. 0096342
**MORGAN & MORGAN, P.A.**
201 N. Franklin Street, Suite 700
Tampa, FL 33602
Telephone:  813-223-5505
Fax:  813-257-0572
MEdelman@forthepeople.com
*Attorney for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing has been filed via CM/ECF and has been provided via electronic transmission and/or via U.S. Mail on this 16th day of September, 2021, to the following:

Garrett S. Kamen, Esq.
FISHER & PHILLIPS LLP
450 East Las Olas Blvd., Suite 800
Fort Lauderdale, FL 33301
gkamen@fisherphillips.com

Mary R. Houston, Esq.
SHUTTS & BOWEN LLP
300 South Orange Avenue, Suite 1600
Orlando, FL 32801
mhouston@shutts.com

Matthew R. Simpson, Esq.
JonVieve D. Hill, Esq.
FISHER & PHILLIPS LLP
1075 Peachtree Street NE, Suite 3500
Atlanta, GA 30309
msimpson@fisherphillips.com
jhill@fisherphillips.com

Johanna Fabrizio Parker, Esq.
Adam E. Primm, Esq.
BENESCH, FRIEDLANDER,
COPLAN & ARONOFF, LLP
200 Public Square, Suite 2300
Cleveland, OH 44114
jparker@beneschlaw.com
aprimm@beneschlaw.com

*Attorneys for Defendant,*
*Peoplease, LLC*

*Attorneys for Defendant, Managed*
*Labor Solutions, LLC*

*/s/ Marc R. Edelman*
**MARC R. EDELMAN, ESQ.**