UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**Case No. 21-cv-22684-BLOOM/Otazo-Reyes**

DEMIS ESPINOZA, *on behalf of himself*
*and on behalf of all others similarly situated*,

      Plaintiff,

v.

PEOPLEASE, LLC, *et al.*,

      Defendants.
_____/

## OMNIBUS ORDER ON MOTIONS TO COMPEL ARBITRATION

**THIS CAUSE** is before the Court upon Defendant Managed Labor Solutions, LLC's ("MLS") Motion to Stay Case and Compel Arbitration or, in the Alternative, to Dismiss Plaintiff's Amended Class Action Complaint, ECF No. [33] ("MLS Motion"), and Defendant Peoplease LLC's ("Peoplease") Motion to Compel Arbitration and Dismiss Plaintiff's Complaint or, Alternatively, to Stay Proceedings, ECF No. [34] ("Peoplease Motion") ("collectively, "Motions"). Plaintiff filed a Response to the MLS Motion, ECF No. [41] ("MLS Response"), and a Response to the Peoplease Motion, ECF No. [42] ("Peoplease Response"), to which MLS and Peoplease filed replies, ECF No. [50] ("MLS Reply"); ECF No. [51] ("Peoplease Reply"). The Court has carefully reviewed the Motions, all opposing and supporting submissions, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motions are denied.

**I.    BACKGROUND**

On June 1, 2021, Plaintiff initiated this putative class action against Defendants MLS and Peoplease (collectively, "Defendants"), arising from Defendants' purported violations of the Fair

Credit Reporting Act of 1970, 15 U.S.C. § 1681, *et seq.* ("FCRA"). *See* ECF No. [1-2]; *see also* ECF No. [29] ("Amended Complaint"). According to the Amended Complaint, Plaintiff was previously employed by MLS through Peoplease between September 18, 2019 and November 13, 2019. *Id.* ¶ 30. MLS and Peoplease terminated Plaintiff's employment on November 13, 2019. *Id.* ¶ 31. Thereafter, in October 2020, Plaintiff again applied for employment with MLS. *Id.* ¶ 32.

On October 19, 2020, as a condition of hire, Plaintiff authorized MLS to obtain his consumer report. *Id.* ¶ 33; *see also* ECF No. [29-1]. On or about October 20, 2020, MLS and Peoplease ordered Plaintiff's consumer report from Crimcheck, a consumer reporting agency. ECF No. [29] ¶ 34. On October 23, 2020, Crimcheck provided MLS and Peoplease with Plaintiff's consumer report, which scored Plaintiff as "questionable" based upon his then-pending criminal charges. *Id.* ¶¶ 35-36. Crimcheck communicated to MLS and/or Peoplease that Plaintiff was ineligible to hire, causing MLS to reject Plaintiff's employment application and MLS and/or Peoplease to confirm Plaintiff's ineligibility in their computer system. *Id.* ¶¶ 37-38.

Plaintiff was rejected for employment on October 23, 2020. *Id.* ¶ 43. Plaintiff then contacted MLS's corporate office to inquire into the status of his application and was informed that his application for employment was rejected due to his background check. *Id.* ¶ 44. Plaintiff did not receive notice or a copy of his background check from MLS prior to his rejection. *Id.* ¶¶ 46-47. Nor did he authorize Peoplease to procure his consumer report. *Id.* ¶¶ 50-52. Based on the foregoing allegations, Plaintiff asserts three claims for relief under the FCRA: Failure to Make Proper Disclosure in Violation 15 U.S.C. § 1681b(b)(2)(A)(i), against Peoplease (Count I); Failure to Obtain Authorization in Violation of 15 U.S.C. § 1681b(b)(2)(A)(ii), against Peoplease (Count II); and Failure to Provide Adverse Action Notice in Violation of 15 U.S.C. § 1681b(b)(3)(A), against MLS (Count III).

Defendants now seek to stay these proceedings and compel Plaintiff to arbitrate the claims alleged in the Amended Complaint on an individual, non-class basis. *See generally* ECF Nos. [33] & [34]. Specifically, Defendants contend that when Plaintiff was hired by MLS through Peoplease on September 18, 2019, Plaintiff signed a Notice and Agreement of Co-Employment, ECF No. [33-1] at 4-5 ("Employment Agreement"), which includes a Dispute Resolution and Arbitration clause ("Arbitration Clause") governing the instant action. The Arbitration Clause provides, in pertinent part:

> I, and [MLS], and PLC, agree to utilize binding arbitration as the sole and exclusive means to resolve *all disputes that may arise between me, [MLS], and/or PLC* including but not limited to disputes regarding termination of employment and compensation. I specifically waive and relinquish my right to bring a claim against [MLS] and/or PLC, in a court of law, and this waiver shall be equally binding on any person who represents or seeks to represent me in a lawsuit against [MLS] or PLC in a court of law. Similarly, PLC specifically waives and relinquishes its rights to bring a claim against me in a court of law, and this waiver shall be equally binding on any person who represents or seeks to represent PLC in a lawsuit against me. [MLS], PLC, and I agree that *any claim, dispute, and/or controversy that I may have against [MLS] (or its owners, directors, officers, managers, employees, or agents), or PLC (or its owners, directors, officers, managers, employees, or agents), or that my [MLS] or PLC may have against Employee*, shall be submitted to and determined exclusively by binding arbitration under the Federal Arbitration Act ("FAA"). Included within the scope of this Agreement are all disputes, whether based on tort, contract, statute (including, but not limited to, any claims of discrimination, harassment and/or retaliation, whether they be based on Title VII of the Civil Rights Act of 1964, as amended, the Age Discrimination in Employment Act, the Americans with Disabilities Act, the Family and Medical Leave Act, or any other state or federal law or regulation), equitable law, or otherwise.
>
> . . .
>
> This Agreement shall not be construed to allow or permit the consolidation or joinder of other claims or controversies involving any other employees, and will not proceed as a class or collective action. […] [Plaintiff], [MLS], and [Peoplease] further understand and acknowledge that the terms of this Agreement include a waiver of any substantive or procedural rights that [Plaintiff] may have against [MLS] or [Peoplease], or that [MLS] or [Peoplease] may have against [Plaintiff] to bring an action on a class, collective, or other similar basis.

3

ECF No. [33-1] at 4 (emphasis added). Plaintiff takes the opposing position, arguing that there is no plausible basis to compel Plaintiff to arbitrate his FRCA claims against Defendants. *See generally* ECF No. [41].

## II. LEGAL STANDARD

The Federal Arbitration Act ("FAA") provides that pre-dispute agreements to arbitrate "evidencing a transaction involving commerce" are "valid, irrevocable, and enforceable save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA reflects "a liberal federal policy favoring arbitration." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). Section 3 of the FAA further states:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.

"Under both federal and Florida law, there are three factors for the court to consider in determining a party's right to arbitrate: (1) a written agreement exists between the parties containing an arbitration clause; (2) an arbitrable issue exists; and (3) the right to arbitration has not been waived." *Sims v. Clarendon Nat. Ins. Co.*, 336 F. Supp. 2d 1311, 1326 (S.D. Fla. 2004) (citing *Marine Envtl. Partners, Inc. v. Johnson*, 863 So. 2d 423, 426 (Fla. 4th DCA 2003) and *Seifert v. U.S. Home Corp.*, 750 So. 2d 633 (Fla. 1999)). Where the claim is statutory in nature, the court must consider if the authorizing legislative body intended to preclude the claim from arbitration. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 627 (1985) ("Just as it is the congressional policy manifested in the [FAA] that requires courts liberally to construe the scope of arbitration agreements covered by that Act, it is the congressional intention

expressed in some other statute on which the courts must rely to identify any category of claims as to which agreements to arbitrate will be held unenforceable."); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991) ("Although all statutory claims may not be appropriate for arbitration, having made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." (citation omitted)).

Confronted with a facially valid arbitration agreement, the burden is on the party opposing arbitration to demonstrate that the agreement is invalid or the issue is otherwise non-arbitrable. *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 92 (2000) ("[T]he party seeking to avoid arbitration bears the burden of establishing that Congress intended to preclude arbitration of the statutory claims at issue."); *In re Managed Care Litig.*, No. 00-1334-MD, 2009 WL 856321, at *3 (S.D. Fla. Mar. 30, 2009) ("It is the burden of the party challenging a facially valid arbitration agreement to demonstrate that the agreement is in fact unconscionable."). "By its terms, the [FAA] leaves no room for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 213 (1985) (emphasis in original). Thus, if the aforementioned criteria are met, the Court is required to issue an order compelling arbitration. *See John B. Goodman Ltd. P'ship v. THF Const., Inc.*, 321 F.3d 1094, 1095 (11th Cir. 2003) ("Under the FAA, 9 U.S.C. § 1 *et seq.*, a district court must grant a motion to compel arbitration if it is satisfied that the parties actually agreed to arbitrate the dispute."); *Hemispherx Biopharma, Inc. v. Johannesburg Consol. Invs.*, 553 F.3d 1351, 1366 (11th Cir. 2008) ("The role of the courts is to rigorously enforce agreements to arbitrate." (citation omitted)).

### III. DISCUSSION

As set forth above, three factors guide the Court's analysis in determining whether the parties' dispute is subject to arbitration: "(1) a written agreement exists between the parties containing an arbitration clause; (2) an arbitrable issue exists; and (3) the right to arbitration has not been waived." *See Sims*, 336 F. Supp. 2d at 1326. The crux of the parties' dispute is whether Plaintiff's FCRA claims fall within the scope of the Arbitration Clause, and therefore whether an arbitrable issue exists.[1]

In determining whether an arbitrable issue exists, the Court must examine the plain meaning of the language contained in the Employment Agreement. *See Rose v. M/V GULF STREAM FALCON*, 186 F.3d 1345, 1350 (11th Cir. 1999) ("It is well settled that the actual language used in the contract is the best evidence of the intent of the parties and, thus, the plain meaning of that language controls." (citing *Green v. Life & Health of America*, 704 So. 2d 1386, 1391 (Fla. 1998)); *see also Spungin v. GenSpring Family Offices, LLC*, 883 F. Supp. 2d 1193, 1198 (S.D. Fla. 2012) ("In the absence of an ambiguity on the face of a contract, it is well settled that the actual language used in the contract is the best evidence of the intent of the parties, and the plain meaning of that language controls." (citation omitted)); *Barakat v. Broward Cnty. Housing Auth.*, 771 So. 2d 1193, 1194-95 (Fla. 4th DCA 2000) ("Contracts are to be construed in accordance with the plain meaning of the words contained therein."). Further, when reviewing a contract to ascertain its true meaning, "the entire contract must be reviewed as a whole without fragmenting any segment or portion." *MDS (Canada), Inc. v. Rad Source Techs., Inc.*, 822 F. Supp. 2d 1263, 1296 (S.D. Fla. 2011) (citing *Jones v. Warmack*, 967 So. 2d 400, 402 (Fla. 1st DCA

---

[1] Indeed, Plaintiff does not challenge whether an agreement to arbitrate exists or whether Defendants waived their right to arbitrate. *See generally* ECF Nos. [41] & [42].

2007)). Courts are not to rewrite the contract. *Id.* (citing *A.I.G. Uruguay Compania de Seguros, S.A. v. AAA Cooper Transp.*, 334 F.3d 997, 1010 (11th Cir. 2003)).

Defendants argue that the Arbitration Clause expressly provides that the parties agree to "utilize binding arbitration as the sole and exclusive means to resolve *all disputes that may arise between [Plaintiff], [MLS], and/or PLC* including but not limited to disputes regarding termination of employment and compensation." ECF No. [33-1] at 4 (emphasis added). According to Defendants, because the Arbitration Clause in this case includes broad arbitration language, there is a high presumption of arbitrability, and any doubts as to the scope of arbitrable issues should be resolved in favor of arbitration. ECF No. [33] at 7; *see also* ECF No. [34] at 7. Defendants further argue that courts within the Eleventh Circuit "have consistently held that claims made under the FCRA, like Plaintiff's here, are arbitrable." ECF No. [33] at 7; *see also* ECF No. [34] at 8-9.[2] Lastly, MLS avers that Plaintiff is precluded from pursuing a putative class action by the express terms of the Arbitration Clause providing that it "shall not be construed to allow or permit the consolidation or joinder of other claims or controversies involving any other employees, and will not proceed as a class or collective action." ECF No. [33] at 8-9; *see also* ECF No. [33-1] at 5.

Plaintiff responds that his FCRA claims are non-arbitrable for several reasons. First, Plaintiff contends that his FCRA claims "are not a foreseeable or immediate consequence of his

---

[2] The cases cited by Defendants in support of their position that Plaintiff's FCRA claims are subject to binding arbitration are materially distinguishable and have no application to the case at hand. *See, e.g.*, *Everett v. Screening Reps., Inc.*, No. 1:17-cv-00071-ELR-CMS, 2017 WL 8186823, at *4 (N.D. Ga. May 5, 2017), *report and recommendation adopted as modified*, No. 1:17-CV-00071-ELR, 2018 WL 1283679 (N.D. Ga. Jan. 25, 2018) (unopposed motion to compel arbitration); *Campbell v. Verizon Wireless, LLC*, No. CIV.A. 14-0517-WS-N, 2015 WL 416484, at *5, n.13 (S.D. Ala. Jan. 29, 2015) (FCRA claim required resolution of the underlying agreement, including the billing procedures and practices outlined therein); *Goodall v. Am. Express Co.*, No. 8:18-CV-3009-T-35TGW, 2019 WL 4306404, at *3 (M.D. Fla. Aug. 26, 2019), *report and recommendation adopted*, No. 8:18-CV-3009-T-35TGW, 2019 WL 4305485 (M.D. Fla. Sept. 11, 2019) ("[Plaintiff's] FCRA claims relate to the contract at issue . . . because the [agreement] specifically addresses [defendant's] reporting obligations regarding [plaintiff's] account information."); *Otero-Ramos v. Serv. Fin. Co., LLC*, 2020 U.S. Dist. LEXIS 76952 (S.D. Fla. 2020) (finding claims under the Family Medical Leave Act of 1933 and the Federal Civil Rights Act of 1992 were arbitrable).

prior co-employment relationship, i.e., 'contractual duties' with Peoplease and MLS." ECF No. [41] at 9; *see also* ECF No. [42] at 8. Specifically, "[n]one of Plaintiff's factual averments relate to his prior employment with MLS and all transpired nearly a year later[,]" Plaintiff's claims exist irrespective of the prior co-employment relationship[,]" and "Plaintiff's claims place him in the position as any other applicant who never had a prior co-employment relationship" with Defendants. ECF No. [41] at 9-10. Additionally, Plaintiff maintains that "the arbitration provision was conditioned upon co-employment and intended only for claims arising out of [the] co-employment" relationship. *Id.* at 10-11. Lastly, Plaintiff avers that the parties' conduct in 2019—namely, that "Plaintiff received the [Employment Agreement] *after* MLS obtained his background check and *after* MLS hired him," *Id.* at 11-12, supports Plaintiff's claim that the Employment Agreement was never intended to cover pre-hire disputes arising prior to formation of the co-employment relationship.

Upon review of the record and consideration of the parties' briefings, the Court is not persuaded that Plaintiff's FCRA claims are arbitrable.[3] While the Arbitration Clause includes broad language of arbitrability and expressly includes disputes based upon federal law, such as the one at issue here, the Court cannot conclude that Plaintiff's Employment Agreement with Defendants compels him to arbitrate the FCRA claims asserted in this action. Indeed, the most ordinary and sensible interpretation of the Employment Agreement is that it contemplates a co-employment relationship between the parties. For example, the Employment Agreement, in which both MLS and Peoplease "agreed to be responsible for various aspects of [Plaintiff's] employment[,]" provides:

- There is no contract of employment between PLC and me, and any contract of employment is solely between me and my current employer. I further acknowledge

---

[3] For the reasons that follow, because the Court concludes that no arbitrable issue exists, the class waiver in the Arbitration Clause does preclude Plaintiff from asserting FCRA claims on behalf of a putative class.

     that my current employer has no authority to bind PLC to any agreement between them and me, and any agreement executed is solely between the client and me;

- Unless required by law, I acknowledge that PLC has no obligation to pay me any other compensation or benefit unless PLC has specifically, in a written agreement with me, adopted the client's obligation to pay me such compensation or benefit;

- I understand that PLC's client (my current employer) at all times ultimately remains obligated to pay me my regular hourly rate of pay if I am a non-exempt employee and to pay me my full salary if I am an exempt employee;

- Unless otherwise required by law, I understand and agree that PLC does not assume responsibility for payment of wages, bonuses, commissions, severance pay, deferred compensation, profit sharing, vacation, sick, or other paid time off pay, or for any other payment, where payment for such items has not been received by PLC from the PLC client for which I am working.

    . . .

- In addition, I also agree that if at any time during my employment I am subjected to any type of discrimination, including discrimination because of race, sex, sexual orientation, harassment of any type, disability, color, age, genetic information, national origin, citizenship status, religion, retaliation, veteran status, military status, or union status, or if I am subjected to any type of harassment including sexual harassment, I will immediately contact an appropriate person of the client company for which I am working. . . .

ECF No. [33-1] at 4. Additionally, the Arbitration Clause references specific controversies that could naturally flow from the parties' co-employment relationship, such as claims relating to "disputes regarding termination of employment and compensation" and "disputes whether based on tort, contract, statute (including, but not limited to, any claims of discrimination, harassment and/or retaliation, whether they be based on Title VII of the Civil Rights Act of 1964, as amended, the Age Discrimination in Employment Act, the Americans with Disabilities Act, the Family and Medical Leave Act, or any other state or federal law or regulation), equitable, or otherwise." *Id.*

    Here, Plaintiff's FCRA claims do not relate to his prior employment with Defendants and transpired almost one year later when he was re-applying for employment with MLS. While Plaintiff's Employment Agreement may be operable regarding claims related to his first

9

employment period, the parties' co-employment relationship had ended. Here, in order to find Plaintiff's claims to be arbitrable, they must be a foreseeable consequence of his prior co-employment relationship with Defendants. *See Calderon v. Sixt Rent a Car, LLC*, 5 F.4th 1204, 1213 (11th Cir. 2021) (A "pro-arbitration canon of construction applies [ ] only if [plaintiff's] lawsuit against [defendant] was an immediate, foreseeable result of the performance of [plaintiff] accepting [the underlying contract]."); *Seifert*, 750 So. 2d at 638 ("As the prevailing case law illustrates, even in contracts containing broad arbitration provisions, the determination of whether a particular claim must be submitted to arbitration necessarily depends on the existence of some nexus between the dispute and the contract containing the arbitration clause."). As Plaintiff correctly argues, his claims "exist irrespective of the prior co-employment relationship" and, in fact, "place him in the position as any other applicant who never had a prior co-employment relationship." ECF No. [41] at 9. Accordingly, the Court finds that Plaintiff did not agree to arbitrate his FCRA claims with Defendants by virtue of the subject Employment Agreement.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that the Motions, **ECF Nos. [33] & [34]**, are **DENIED**. Defendant MLS shall file an Answer to the Amended Complaint, ECF No. [29], **no later than January 3, 2022**.[4]

**DONE AND ORDERED** in Chambers at Miami, Florida, on December 17, 2021.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

---

[4] The Court recognizes that Peoplease filed an Answer to the Amended Complaint on September 30, 2021. ECF No. [35].

Case No. 21-cv-22684-BLOOM/Otazo-Reyes

Copies to:

Counsel of Record